UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **TRANSPORTATION INSURANCE** | : | **CIVIL NO.** |
| **COMPANY** | : | **3:01 CV 2131 (WWE)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **MORGANTI GROUP, INC. ET AL.,** | : | |
| | : | |
| **Defendants.** | : | **JANUARY 30, 2004** |

**PLAINTIFF, TRANSPORTATION INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
COMPEL FULL RESPONSES TO PLAINTIFF'S SECOND SET OF
INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Pursuant to D. Conn. L. Civ. R. 7 and 37, plaintiff and counterclaim defendant,

Transportation Insurance Company ("TIC"), hereby submits the following Memorandum of Law

in support of its Motion to Compel Responses to its Second Set of Interrogatories and Requests

for Production.

**I.    INTRODUCTION**

This action was brought by TIC to obtain a declaratory ruling that, pursuant to the terms

of a contract for insurance, there is no insurance coverage for the defendants, the Morganti

Group, Inc. and Morganti Florida, Inc.'s, (collectively hereinafter "Morganti") to pay for

Morganti to replace paint that is peeling from the ceiling of a United States Postal Service

**ORAL ARGUMENT REQUESTED**

("USPS") facility that was built by Morganti and its subcontractors. Morganti subsequently filed counterclaims against TIC alleging, among other things, bad faith in the handling of the claim for indemnity for the peeling paint damage.

## II.    PROCEDURAL HISTORY OF SECOND SET OF DISCOVERY REQUESTS

TIC served the second set of discovery requests on Morganti on October 14, 2002. Responses to these requests were due, pursuant to Fed. R. Civ. P. 33 and 34, in 30 days on November 13, 2002. Morganti did not file responses on or before November 13, 2002, but instead moved for a 30-day extension of time on November 19, 2002; six days after its responses were due. Morganti's stated reason for this first extension was "that the information and materials needed to respond are still being gathered, and therefore, proper and adequate responses are not possible at this time." TIC did not object to this first motion for extension of time.

Morganti's first motion for extension of time was granted on November 22, 2002. Pursuant to the Court's order, responses were due on December 13, 2002. Morganti failed to file responses on or before that day. Rather, Morganti moved for a second 30-day extension of time on December 20, 2002, seven days after its responses were due. Morganti again stated that an extension was necessary because information and materials needed to be gathered. TIC did not object to this second untimely extension of time but made clear in communications with Morganti's counsel that it would not agree to any further extensions of time. Morganti's second motion for extension of time was granted on December 27, 2002. Pursuant to the Court's order, responses were due on January 13, 2003.

Morganti's third motion for extension of time was made January 17, 2003, four days after its responses were due. Morganti's explanation for why it still required an additional time to respond was that "This additional time is required due to the conflicting schedules of counsel and the individuals involved in the preparation of the Defendants responses." On January 22, 2003, TIC objected to Morganti's third request for an extension of time. The Court granted this third request for time on January 23, 2003, requiring that Morganti respond to the discovery requests by February 3, 2003.

Since February 3, 2003, Morganti has not sought, and the Court has not granted, any further extensions of time to Morganti. Morganti eventually served responses on March 24, 2003 – although the pleading cover sheet is dated February 24, 2003. A copy of Morganti's written responses are attached as Exhibit 1.

The parties then sought a mutually-agreeable resolution to this matter but were unsuccessful. In light of the need to move the litigation forward, on November 7, 2003, the Court (Eginton, Sr. U.S.D.J.) granted a modification to the scheduling order such that written discovery and depositions should be completed by March 12, 2004. On January 14, 2004, counsel for TIC wrote to Morganti's counsel with a lengthy list of concerns about Morganti's objections and responses to TIC's Second Set of Interrogatories and Requests for Production. See J. Casey Affidavit (Exhibit 2). In that letter, counsel for TIC asked that Morganti's counsel contact him within ten days due to the approaching discovery deadline to discuss TIC's concerns. As of the date of this Memorandum, Morganti's counsel has not contacted counsel for TIC concerning Morganti's discovery responses or the concerns raised in the January 14, 2004 letter.

As required by D. Conn. L. Civ. R. 37, counsel for TIC has made good faith efforts to resolve this matter that have not been reciprocated by counsel for Morganti. See J. Casey Affidavit (Exhibit 2). Intervention of the Court is required at this time to allow TIC to obtain the information to which it is entitled under our discovery process.

## III.    TIC'S SECOND SET OF DISCOVERY REQUESTS

TIC's Second Set of Interrogatories and Requests for Production consist of six interrogatories and fourteen production requests.

### A.    Substance of the Discovery Requests

The discovery requests can be broken down into four general categories of information: (1) the construction, installation, and painting of the ceiling; (2) the discovery, investigation, and remedy of the paint peeling problem; (3) insurance and other means to cover the cost of the paint peeling problem; and (4) expert analysis and opinions.

### B.    General Deficiencies in Morganti's Responses

#### i.    Interrogatories

In general, Morganti's responses to each of the Interrogatories are deficient, in that the answers are evasive or incomplete, due to the lack of substantive information and the inclusion of unsupported or unnecessary objections to each and every Interrogatory. As discussed below, Morganti has forfeited its right to assert objections by failing to file them in a timely fashion. In addition, Morganti's objections, when coupled with a brief substantive response, creates an overall response that is evasive and confusing because it is unclear whether responsive

information is being withheld on the basis of the objections or if Morganti's responses are complete although subject to the objection.

### ii.  Requests for Production

The condition of the documents Morganti provided in response to all of the requests for production is unacceptable.  The documents were delivered in a single pile, with no indication as to which document is responsive to which request, which is required by Fed. R. Civ. P. 34(b) and without a Privilege Log, which is required by D. Conn. L. Civ. R. 37(a).  Furthermore, Morganti objected to every request except for two to which it responded with an unequivocal "None" (number 9) or "None at this time" (number 11).  Therefore, it is impossible to discern what, if anything is responsive to any particular request or if Morganti has fully complied with each individual request for documents.  Furthermore, there are multiple copies of many of the same documents, such that nearly two-thirds of the documents provided to TIC were duplicates.  While these duplicates may have some significance if they mean to respond to separate requests, this can not be ascertained due to the manner in which the production was supplied.

In addition, as with Morganti's objections to the Interrogatories, it is uncertain whether Morganti's objections to the requests for production are meant to suggest that there are further responsive documents which have not been disclosed or if all relevant documents have been provided notwithstanding Morganti's objections.  If Morganti is withholding documents based on its objections, it must provide a privilege log.  On the other hand, if Morganti is not withholding any documents, it should clarify its responses and remove its objections so that TIC can be sure Morganti has provided complete and accurate responses to these production requests.

## IV.    ARGUMENT

### A.    Morganti Has Waived Its Right to File Objections

Foremost, because it failed to respond by February 3, 2003, as required by the order of this Court, Morganti has waived its right to object to TIC's discovery requests or otherwise attempt to limit the scope of discovery.  See Kimbro v. I.C. System, Inc., No. 3:01 CV 1676(DJS), 2002 WL 1816820 (D. Conn. July 22, 2002) (Smith, Mag. J.) ("[A] party which fails to object to a discovery request waives any objections it otherwise might have made.") (citing Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1473 (9th Cir. 1992); Smith v. United States, 193 F.R.D. 201, 207 n.19 (D. Del. 2000)); see also Nagele v. Electronic Data Systems Corp., 193 F.R.D. 94 (W.D.N.Y. 2000); Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc., 200 F.R.D. 255 (M.D.N.C. 2001).  Therefore, this Court should order Morganti to withdraw all objections and to fully respond to TIC's discovery requests.

Assuming, arguendo, Morganti still has a legal basis to object to a request for production and withhold documents from disclosure, it has failed to provide a Privilege Log as required by D. Conn. L. Civ. R. 37(a).  To the extent this Court will allow Morganti to maintain any objections to TIC's second set of requests for production, Morganti still must provide a Privilege Log identifying those documents to which it claims a privilege.  In addition, regardless of its ability to assert objections, Morganti should still be made to comply with Fed. R. Civ. P. 34(b) requiring it to associate the documents it produces with a specific production request.

**B.    Morganti's Discovery Responses Are Deficient**

Morganti's responses are best described as evasive and incomplete, therefore qualifying as a failure to respond under Fed. R. Civ. P. 37(a)(3). The general deficiencies, as well as specific inadequacies, in its responses are laid out in detail elsewhere in this Memorandum. Such evasive and incomplete responses are not surprising in light of Morganti's initial failure to comply with deadlines for service of discovery responses as set forth in the rules of procedure and this Court's orders. Throughout this entire litigation, Morganti has sought to frustrate the purpose of our rules of discovery. Morganti continues with this practice by failing to participate with, or even to respond to, counsel for TIC's request to confer over TIC's concerns. For these reasons, this Court should order to withdraw all objections and provide full responses to TIC second set of discovery requests. Specifically, Morganti should be made to address each of TIC's particular concerns raised below and should be required, pursuant to Fed. R. Civ. P. 34(b) to associate the documents it produces with a specific production request.

**C.    Specific Discovery Requests and Responses**

Below is a listing of those specific discovery requests, broken down by category, to which Morganti has not provided an adequate response. As mentioned above, TIC maintains that Morganti has forfeited the right to object to any discovery requests because its response were made after the due date of February 3, 2003, set by this Court. In this section, TIC discusses the responses and their deficiencies as they currently stand.

### i.  Construction, Installation, and Painting of Ceiling

This information is necessary to determine the cause of the paint peeling problem and the identity of entities that may be responsible for the problem.  This factual information is relevant to the question of insurance coverage under the TIC policy and the identification of other potentially responsible parties.

### 1.  Interrogatories

*1. Identify the date(s) the steel ceiling, from which paint is now peeling, and which is the subject of the Paint Damage Claim, was installed at the Project and identify who installed the steel ceiling.*

*2. Identify the date(s) the paint, which is now peeling, and is the subject of the Paint Damage Claim, was applied to the steel ceiling at the Project and identify who applied the paint to the steel ceiling.*

*3. Identify the company(s) who manufactured and/or supplied the steel ceiling at the Project and describe the type of and specifications for the steel ceiling actually installed at the Project.*

*4. Identify the company(s) who supplied the paint for the steel ceiling at the Project, which paint is now peeling, and which is the subject of the Paint Damage Claim and describe the type of and specifications for the paint actually applied to the steel ceiling.*

### 2.  Morganti's Specific Deficiencies

In Morganti's response to Interrogatory 2, it indicates that the paint was "supplied" to the project by Latin American Painting and Hernandez Painting Inc.  Since this question called for the identity of the entity that "applied" the paint, it is assumed that Morganti intended to respond that the paint was "applied" by those two entities and that the use of the word "supplied" in this response was a scrivener's error.  This issue needs clarification, however, in the event that Morganti intended the use of the word "supplied" because the identity of the entity that applied

the paint is a critical fact. More importantly, however, is Morganti's failure to clarify which

entity actually applied this paint. By listing two companies, it is unclear whether they each

applied some paint or that this is one entity that is known by two different names. In Morganti's

production responses, Hernandez Painting, Inc. was identified as Morganti's painting

subcontractor on the subcontract itself, but certificates of insurance identified Latin American

Painting. Morganti needs to clarify which entity actually conducted the work.

In Interrogatory 4, Morganti was asked to identify which company supplied the paint to

the project. Morganti again answered that it was supplied by Latin American Painting and

Hernandez Painting, Inc. Again, this answer is confusing unless both companies supplied the

paint. This answer is also contradicted by the document production which suggests that Sherwin-

Williams supplied the paint. Again, Morganti needs to clarify the answer.

### 3.  Requests for Production

*2.  All documents relating to the subcontract, including contracts, correspondence, specifications and/or plans, between Morganti and paint suppliers and/or painting subcontractor(s) disclosed in your response to Interrogatory numbers 2 and 4, including, but not limited to, all documents pertaining to work performed by those company(s) in connection with the Project.*

*3.  All documents relating to the subcontract, including contracts, correspondence, specifications and/or plans, between Morganti and steel suppliers and/or installers identified in your response to Interrogatory numbers 1 and 3, including but not limited to, work performed by those company(s) in connection with the Project.*

*5.  All documents relating to communications between Morganti and the company(s) identified in your responses to Interrogatories numbers 1 through 4 pertaining to alleged defects in the construction and/or painting of the ceiling at the Project.*

### 4. Morganti's Specific Deficiencies

In Request for Production 2, TIC asks for all documents relating to the subcontract between Morganti and Morganti's painting subcontractor and suppliers. In the papers provided to TIC, there were only two letters from Hernandez Painting and parts of the subcontract. Furthermore, it appears that all documents provided to TIC are from after the paint peeling problem was discovered. In its demand letter, the USPS noted that there was a change in the painting contract specifications; however, there are no materials in the documents Morganti provided concerning that change. It is unlikely that there were only two letters between Morganti and Hernandez Painting. Morganti must produce all documents responsive to this request, not only those documents from subsequent to the peeling paint condition, but from before or during the construction of this project as well.

Request number 3 asks for the same documents for the steel suppliers and installers as was requested in request number 2 for the paint suppliers and painting subcontractors. TIC has the same concerns about Morganti's response to this request as to its response to request number 2 and asks that Morganti provide all documents responsive to this request, not only those documents generated after the discovery of the problem, but those from the time of the construction of the project as well.

### ii. Discovery, Investigation, and Remedy of Peeling Paint Problem

Information of this nature is relevant to the claims and defenses in this case in that it may identify the cause of the problem, including Morganti's own responsibility, as well as the extent

of any repairs needed to be undertaken and the extent of any damage caused by the problem for

which Morganti asserts insurance coverage exists.

### 1. Interrogatories

*5. Describe in detail Morganti's actions to remedy the peeling paint condition at the Project, including a complete description of all costs and expenses incurred, the identity of all persons and/or entities involved in the remediation process, and the date(s) any such remediation occurred.*

*6. Describe in detail any investigation or analysis performed by or on behalf of Morganti relating to the peeling paint condition involving the steel ceiling at the Project.*

### 2. Morganti's Specific Deficiencies

In these interrogatories, Morganti was asked to describe in detail Morganti's actions to

remedy the paint peeling problem and to provide in detail any investigation or analysis performed

by or on behalf of Morganti concerning the problem. Morganti's answers to these interrogatories

are unresponsive. Although under Fed. R. Civ. P. 33(d) it is appropriate to refer to specific

documents in which this information could be found, which Morganti attempts to do here, the

manner in which Morganti provided its production responses give no indication as to which

documents are responsive to these interrogatories. Furthermore, the documents fail to fully

answer these questions which require a complete description of all costs and expenses, the

identity of all persons or entities involved, and the dates any activities took place.

### 3. Requests for Production

*1. All documents relating to the construction contract between the USPS and Morganti for the construction of the Project, including demands to correct the peeling ceiling paint condition.*

*4. All documents relating to communications between the USPS and Morganti pertaining to alleged defects in the construction and/or painting of the ceiling at the Project.*

*8. Any tests, reports, studies or other documents relating to Morganti's investigation into causes of the peeling ceiling paint problem including, but not limited to, any documents responsive to Interrogatory number 6.*

*9. All documents pertaining to any arbitration or other dispute resolution proceeding between Morganti and USPS.*

*14. All documents relevant to or relied upon in your response to Interrogatory number 6.*

### 4. Morganti's Specific Deficiencies

In Request for Production 1, TIC asks for all documents relating to the construction contract, including the demands to correct the peeling paint conditions. Notwithstanding its objection, Morganti stated that it will produce the contract and any correspondence from the USPS. In the papers provided to TIC, there were what appeared to be some parts of the subcontracts between Morganti and SMI Steel and Hernandez Painting. However, a complete copy of the contract is clearly not part of the materials provided. In addition, while there are one or two letters from the Postal Service concerning this problem, it seems inconceivable that that is the full extent of communications regarding this problem and the contract.

In Request for Production 4, TIC asks for all documents relating to the communications between USPS and Morganti pertaining to the paint problem and other defects in the construction and/or painting of the ceiling. As noted above, although Morganti's production included a couple of letters from the USPS, it appears unlikely that for a project of this magnitude there were so few documents relating to this problem.

In number 14, TIC asks for all documents relevant to or relied upon by Morganti in its response to Interrogatory 6, which asked for details of any investigation or analysis performed by

or on behalf of Morganti. Morganti objected to request number 14 and, presumably, provided no documents responsive to it. This objection, however, is inconsistent with Morganti's actual answer to Interrogatory 6 in which it is stated that Morganti's actions regarding investigation or analysis are reflected in "documents attached to this discovery response." While it appears that in the documents Morganti provided there are documents related to analysis and investigation, this inconsistency needs to be resolved.

### iii. Insurance or Other Means to Cover Costs of Peeling Paint Problem

The existence and identity of all insurance coverage applicable to the construction project is relevant to determine the question of whether the TIC policy provides coverage, the parties' intentions regarding coverage and the existence of other insurance protection applicable to this claim.

### 1. Requests for Production

*6. All documents pertaining to communications between Morganti and Willis, or any other insurance broker, relating to issuance of the liability policy or other insurance coverage including, but not limited to bonds, for the peeling ceiling paint claim by the USPS.*

*7. All statements made by Morganti pertaining to potential insurance coverage for the peeling ceiling paint condition.*

*10. All documents relating to issuance of CGL and umbrella insurance for Morganti from 1999 through 2001, including insurance binders, communications with any broker, descriptions of the scope of coverage or discussion thereof.*

*12. All documents pertaining to any other insurance issued to Morganti in connection with the Project, including surety bonds, performance bonds or other types of insurance issued in connection with the construction of the Project.*

*13. All documents relating to any lawsuits or other claims made against the company(s)
identified in your responses to Interrogatory numbers 1 through 4 or any other party potentially
responsible for the peeling ceiling paint condition.*

### 2. Morganti's Specific Deficiencies

In Request for Production 10, TIC asked for all documents relating to the CGL and

umbrella policies issued to Morganti from 1999 to 2001. Surprisingly, Morganti objected to this

request and provided no substantive response to it when in Morganti's counterclaims it is alleged

that TIC failed to provide insurance coverage as agreed upon between it and Morganti. TIC can

not comprehend how Morganti can refuse to turn over documents which might shed light on the

alleged agreed-upon insurance coverage, when that fact is a central part of Morganti's claim

against TIC. Morganti should be ordered to withdraw its objection and provide all documents

which evidence insurance coverage promised to Morganti by TIC for the relevant policy years.

In number 12, TIC asked for all documents pertaining to other insurance issued to

Morganti in connection with the project, including bonds. In its response, Morganti stated it

would produce the payment and performance bonds – and a copy of those were included with the

papers provided; however, Morganti has not provided a complete response to this request.

Morganti should provide documents regarding all other insurance issued to Morganti including

that insurance that was in effect prior to the inception of coverage under TIC's policy in 1999.

In response to Request for Production 13, which asks for all documents relating to any

lawsuits or other claims made against its subcontractors, Morganti responded that there were no

such documents, but conditioned that response upon a lengthy objection. Morganti should clarify

- 14 -

its response and either withdraw the objection or make clear that documents are withheld based on the objection.

## V.   CONCLUSION

For the reasons stated above, TIC respectfully requests that the Court enter an Order compelling Morganti to fully respond, without objection, to TIC's Second Set of Interrogatories and Requests for Production.

PLAINTIFF AND COUNTERCLAIM
DEFENDANT
TRANSPORTATION INSURANCE COMPANY

By: _____
    Theodore J. Tucci (ct05249)
    ttucci@rc.com
    John P. Casey (ct21993)
    jcasey@rc.com
    Robinson & Cole LLP
    280 Trumbull Street
    Hartford, CT  06103-3597
    Tel. No.: (860) 275-8200
    Fax. No.: (860) 275-8299

- 15 -

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was sent via first class mail, postage

prepaid, on this 30th day of January 2004, to:

Louis R. Pepe, Esq.
Gary F. Sheldon, Esq.
Wendy K. Venoit, Esq.
Pepe & Hazard, LLP
225 Asylum Street
Hartford, CT 06103

                                        _____
                                        John P. Casey

# Exhibit 1

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TRANSPORTATION INSURANCE | : | CIVIL NO. |
| COMPANY | : | 3:01 CV 2131 (WWE) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| MORGANTI GROUP, INC. ET AL., | : | |
| | : | |
| Defendants. | : | FEBRUARY 24, 2003 |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S SECOND SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION

The Defendants, The Morganti Group, Inc. and Morganti Florida, Inc. (collectively "Morganti"), hereby object and respond to the Plaintiff, Transportation Insurance Company's ("TIC"), Second Set of Interrogatories and Requests for Production.

## SECOND SET OF INTERROGATORIES

1.    Identify the date(s) the steel ceiling, from which paint is now peeling, and which is the subject of the Paint Damage Claim, was installed at the Project and identify who installed the steel ceiling.

DEF 000655

**OBJECTION:.** Morganti objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:** The subject steel deck to which the subject paint was applied was installed between December 1997 and July 1998. The steel was installed by SMI Steel Florida, P.O. Box 6716, Jacksonville, FL 32236.

    2.    Identify the date(s) the paint, which is now peeling, and is the subject of

the Paint Damage Claim, was applied to the steel ceiling at the Project and identify who

applied the paint to the steel ceiling.

**OBJECTION:.** Morganti objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE**: The subject paint was applied between December 1997 and October 1998. The subject paint was supplied to the project by Latin American Painting and Hernandez Painting, Inc., 1790 Brokenbow Drive, W. Jacksonville, FL 32225.

    3.    Identify the company(s) who manufactured and/or supplied the steel ceiling

at the Project and describe the type of and specifications for the steel ceiling actually

installed at the Project.

**OBJECTION:.** Morganti objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

DEF 000656

**RESPONSE**: The subject steel deck was manufactured by Southern Steel Products. The subject steel was installed by SMI Florida. The steel specification is located at section 05310 of the specifications for the subject project. The steel is described further in other documents in the project file including the plans and submittals.

   4.  Identify the company(s) who supplied the paint for the steel ceiling at the Project, which paint is now peeling, and which is the subject of the Paint Damage Claim and describe the type of and specifications for the paint actually applied to the steel ceiling.

**OBJECTION:**. Morganti objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE**: The subject paint was supplied to the project by Latin American Painting and Hernandez Painting, Inc., 1790 Brokenbow Drive, W. Jacksonville, FL 32225. The paint specification is located at section 09900 of the specifications for the subject project.

   5.  Describe in detail Morganti's actions to remedy the peeling paint condition at the Project, including a complete description of all costs and expenses incurred, the identity of all persons and/or entities involved in the remediation process, and the date(s) any such remediation occurred.

DEF 000657

**OBJECTION:** Morganti objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:** Morganti's actions to investigate and remedy the subject condition was limited based upon its understanding that the matter would be addressed by TIC. Morganti's actions are generally reflected in the documents attached to this discovery response and in the portion of the project file which will be made available in response to the plaintiff's request for production herein.

6.     Describe in detail any investigation or analysis performed by or on behalf of Morganti relating to the peeling paint condition involving the steel ceiling at the Project.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine. Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE**

Morganti's actions to investigate and remedy the subject condition was limited based upon its understanding that the matter would be addressed by TIC. Morganti's actions are generally reflected in the documents attached to this discovery response and in the project file.

4

DEF 000658

## SECOND SET OF REQUESTS FOR PRODUCTION

     1.     All documents relating to the construction contract between the USPS and

Morganti for the construction of the Project, including demands to correct the peeling

ceiling paint condition.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the
disclosure or identification of documents or information protected from disclosure by the
attorney/client or other applicable privileges, or protected by the work product doctrine.
Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous,
overly broad, unduly burdensome, not calculated to lead to the discovery of admissible
evidence, and calls for legal conclusions.

**RESPONSE:** Notwithstanding its objection, Morganti will produce the contract with
USPS together with any correspondence from USPS with demands to correct the peeling
paint condition.

     2.     All documents relating to the subcontract, including contracts,

correspondence, specifications and/or plans, between Morganti and paint suppliers and/or

painting subcontractor(s) disclosed in your response to Interrogatory numbers 2 and 4,

including, but not limited to, all documents pertaining to work performed by those

company(s) in connection with the Project.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the
disclosure or identification of documents or information protected from disclosure by the
attorney/client or other applicable privileges, or protected by the work product doctrine.
Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous,

DEF 000659

overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:** Notwithstanding its objection, Morganti will produce the subcontract contract documents, and the subcontract files for the referenced companies.

       3.    All documents relating to the subcontract, including contracts,

correspondence, specifications and/or plans, between Morganti and steel suppliers and/or

installers identified in your response to Interrogatory numbers 1 and 3, including but not

limited to, work performed by those company(s) in connection with the Project.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine. Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:** Notwithstanding its objection, Morganti will produce the subcontract contract documents, and the subcontract files for the referenced companies.

       4.    All documents relating to communications between the USPS and Morganti

pertaining to alleged defects in the construction and/or painting of the ceiling at the

Project.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine.

DEF 000660

6

Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:** Notwithstanding its objection, Morganti will produce all correspondence between USPS and Morganti regarding the subject paint issue.

5.    All documents relating to communications between Morganti and the

company(s) identified in your responses to Interrogatories numbers 1 through 4 pertaining

to alleged defects in the construction and/or painting of the ceiling at the Project.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine. Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:** Notwithstanding its objection, Morganti will produce the subcontract contract documents, and the subcontract files for the referenced companies.

6.    All documents pertaining to communications between Morganti and Willis,

or any other insurance broker, relating to issuance of the liability policy or other

insurance coverage including, but not limited to bonds, for the peeling ceiling paint claim

by the USPS.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine.

7

DEF 000661

Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:** Notwithstanding its objection, Morganti will produce all correspondence between Morganti and Willis regarding insurance coverage for the subject paint issue.

     7.     All statements made by Morganti pertaining to potential insurance coverage

for the peeling ceiling paint condition.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine. Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:** Notwithstanding its objection, Morganti will produce all non-privileged communications from Morganti regarding potential insurance coverage for the peeling ceiling paint condition.

     8.     Any tests, reports, studies or other documents relating to Morganti's

investigation into causes of the peeling ceiling paint problem including, but not limited to,

any documents responsive to Interrogatory number 6.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine.

DEF 000662

8

Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:** Notwithstanding its objection, Morganti will produce any tests, reports, or studies in Morganti's possession regarding the subject paint issue.

9.    All documents pertaining to any arbitration or other dispute resolution proceeding between Morganti and USPS.

**RESPONSE:** None

10.    All documents relating to issuance of CGL and umbrella insurance for Morganti from 1999 through 2001, including insurance binders, communications with any broker, descriptions of the scope of coverage or discussion thereof.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine. Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

11.    All documents prepared by any experts to be called at trial.

**RESPONSE:**    None at this time.

DEF 000663

12.    All documents pertaining to any other insurance issued to Morganti in connection with the Project, including surety bonds, performance bonds or other types of insurance issued in connection with the construction of the Project.

**OBJECTION:**  Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine. Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:**  Notwithstanding its objection, Morganti will produce the payment and performance bond issued for this project.

13.    All documents relating to any lawsuits or other claims made against the company(s) identified in your responses to Interrogatory numbers 1 through 4 or any other party potentially responsible for the peeling ceiling paint condition.

**OBJECTION:**  Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine. Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

**RESPONSE:**    None.

DEF 000664

14.    All documents relevant to or relied upon in your response to Interrogatory number 6.

**OBJECTION:** Morganti objects to this request to the extent that it calls for the disclosure or identification of documents or information protected from disclosure by the attorney/client or other applicable privileges, or protected by the work product doctrine. Morganti further objects to this interrogatory due to the fact that it is vague, ambiguous, overly broad, unduly burdensome, not calculated to lead to the discovery of admissible evidence, and calls for legal conclusions.

DEF 000665

DEFENDANTS,
MORGANTI NATIONAL, INC.
MORGANTI FLORIDA, INC.

By _____

    Gary F. Sheldon
    Federal Bar ct14737
    Pepe & Hazard LLP
    Its Attorneys
    Goodwin Square
    Hartford, CT 06103-4302
    Tel. No. (860) 522-5175
    gsheldon@pepehazard.com

DEF 000666

## DEFENDANT'S CERTIFICATION

I hereby certify that I have reviewed the above Interrogatories, Requests and responses. I have personal knowledge with respect to some, but not all, of the information requested in the foregoing interrogatories. With respect to that information of which I have personal knowledge, the information provided herein is true and accurate to the best of my knowledge and belief.

By _____

Vincent Simone
Vice President
The Morganti Group, Inc.
*Duly Authorized*

Subscribed and sworn to before me this 25th day of February, 2003

_____
Commissioner of the Superior Court
Notary Public

My Commission Exp. Sep. 30, 2005

## **CERTIFICATION**

This is to certify that a copy of the foregoing was hand delivered to the following counsel of record on March  24, 2003:

Theodore J. Tucci
Robinson & Cole LLP
280 Trumbull St
Hartford, CT 06103-3597


Gary F. Sheldon

# Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **TRANSPORTATION INSURANCE COMPANY** | : | **CIVIL NO.** |
| | : | **3:01 CV 2131 (WWE)** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **MORGANTI GROUP, INC. ET AL.,** | : | |
| | : | |
| Defendants. | : | **JANUARY 30, 2004** |

## AFFIDAVIT OF JOHN P. CASEY

I, John P. Casey, Esq., being duly sworn, do hereby depose and say:

1.     I am over the age of 18 years and understand the obligations of an oath.

2.     I am an attorney at law with the firm of Robinson & Cole LLP, representing the plaintiff and counterclaim defendant, Transportation Insurance Company ("TIC"), in the above captioned matter.

3.     On October 14, 2002, I had served upon the defendants, the Morganti Group, Inc. and Morganti Florida, Inc.'s, (collectively hereinafter "Morganti"), a Second Set of Interrogatories and Requests for Production. The discovery requests consisted of six interrogatories and 14 requests for production concerning the construction project and subsequent ceiling paint failure at issue in this case.

4.     I have been personally involved in discussions and written communication with Gary Sheldon, Esq., counsel for Morganti, regarding Morganti's responses to TIC's second set of discovery requests.

5.      Responses to TIC's second set of discovery requests were initially due November 13, 2002. Morganti did not file responses on or before that date, but instead moved for a 30-day extension of time on November 19, 2002, six days after its responses were due. TIC consented to this first motion for extension of time.

6.      Morganti's first motion for extension of time was granted on November 22, 2002. Pursuant to the Court's order, responses were due on December 13, 2002.

7.      Morganti did not file responses on or before December 13, 2002. On December 18, 2002, Attorney Sheldon and I exchanged e-mails about a second extension of time. TIC did not object to this second untimely extension of time but I made clear in my e-mail to Attorney Sheldon that we would not agree to any further extensions of time and that discovery needed to proceed despite any efforts to resolve the matter. A copy of this e-mail, dated December 18, 2002, is attached as Exhibit A.

8.      Morganti moved for a second 30-day extension of time on December 20, 2002, which was granted on December 27, 2002. Pursuant to the Court's order, responses were due on January 13, 2003.

9.      Beginning in December 2002, the parties discussed a possible resolution of this matter. Throughout those discussions, however, TIC has maintained its position that engaging in such discussions did not modify Morganti's obligation to respond to the discovery requests.

10.     On January 15, 2003, I wrote to Attorney Sheldon inquiring of the status of his client's discovery responses, which were two days past due. A copy of my letter, dated January 15, 2003, is attached as Exhibit B.

11.     In response to my letter, Attorney Sheldon faxed a written proposal concerning the resolution of this matter to me. I responded in writing, indicating that I would forward his

- 2 -

proposal to my client, but that I still expected him to provide responses to our discovery requests. A copy of this letter, also dated January 15, 2003, is attached as Exhibit C.

12.    On January 17, 2003, Attorney Sheldon and I again exchanged e-mails on the subject of discovery responses.  In that exchange, I again informed him TIC's position was that settlement discussions were separate and distinct from the requirement to respond to discovery. A copy of this e-mail, dated January 17, 2003, is attached as Exhibit D.

13.    Morganti's third motion for extension of time was made January 17, 2003, four days after its responses were due.  On January 22, 2003, TIC objected to Morganti's third request for an extension of time.  The Court granted this third request for time on January 23, 2003, requiring that Morganti respond to the discovery requests by February 3, 2003.

14.    Morganti did not serve substantive responses or objections on TIC on or before February 3, 2003 and did not receive any additional extensions of time from the Court, although the parties did agree to an informal extension of time to February 12, 2003.  A copy of this e-mail, dated February 10, 2003, is attached as Exhibit E.

15.    On March 24, 2003, Morganti served objections and responses to TIC's Second Set of Interrogatories and Requests for Production.

16.    Since that time, the parties have continued to attempt to resolve this litigation by means of a mutually-acceptable agreement; however, we have not been able to agree to terms.

17.    On November 7, 2003, the Court (Eginton, Sr. U.S.D.J.) granted a modification of the scheduling order in this matter such that written discovery and depositions should be completed by March 12, 2004.

18.     On January 14, 2004, I wrote to Attorney Sheldon with a lengthy list of concerns about Morganti's objections and responses to TIC's Second Set of Interrogatories and Requests for Production.  A copy of that letter is attached as Exhibit F.

19.     In that letter, I asked that Attorney Sheldon contact me within ten days to discuss TIC's concerns.

20.     As of the date of this Affidavit, Attorney Sheldon has not contacted me concerning Morganti's discovery responses or the concerns I raised in my letter of January 14, 2004.

21.     Based on my experience during the course of this litigation, I believe further attempts by the parties to resolve this dispute would be in effective.

22.     Due to the approaching discovery deadline, I believe court involvement is necessary to resolve this dispute in a timely manner.

23.     I certify that I have made good faith attempts to resolve this dispute that have not been reciprocated by counsel for Morganti.

John P. Casey

Subscribed and sworn to before me
this 30th day of January 2004.

Donelle M. Bartlett

Notary Public

DONELLE M. BARTLETT
*NOTARY PUBLIC*
MY COMMISSION EXPIRES JULY 31, 2007

- 4 -

# Exhibit A

## Casey, John P

| From: | Casey, John P |
|---|---|
| **Sent:** | Wednesday, December 18, 2002 4:55 PM |
| **To:** | 'Sheldon, Gary' |
| **Cc:** | Casey, John P |
| **Subject:** | RE: Morganti |

Gary,
This note is to confirm our agreement to grant you another 30-day extension to file responses to our second set of discovery requests. I appreciate the fact that we have been in negotiation about an alternate resolution or delay in this case, but we must insist that we continue to move the underlying litigation along until such time we have an alternate agreement. That being said, this is the last extension we will agree to and we will move to compel your responses if we do not have them by Jan 13 (Jan 12 falling on a Sunday). Thank you for your understanding in this regard.
- John

John P. Casey
Robinson & Cole LLP
860-275-8359

-----Original Message-----
**From:** Sheldon, Gary [mailto:GSHELDON@PEPEHAZARD.COM]
**Sent:** Wednesday, December 18, 2002 12:02 PM
**To:** 'Casey, John P'
**Subject:** RE: Morganti

John,

2. 30 days is fine.
1. We need another 30 days. Frankly, we stopped working on them to work on your dismissal/stay issue.

Please confirm by email. I hope to get back to you in the next couple of days.

Gary

-----Original Message-----
**From:** Casey, John P [mailto:jcasey@RC.com]
**Sent:** Wednesday, December 18, 2002 11:48 AM
**To:** Gary F. Sheldon Esq. (gsheldon@pepehazard.com)
**Subject:** Morganti

Gary,
While waiting for your response on the dismissal/stay issue, I have two more pressing concerns:

(1) Your responses to our second set of discovery requests were due Dec. 12. We had granted you a 30-day extension with the understanding that you would have your responses on the promised date and that we would not agree to an additional extension. Please advise as to the status of your responses.

(2) We discussed an extension of time to disclose our experts. In light of our past history of allowing reasonable extensions of time, I ask that you agree to a 30-day extension.

I look forward to your response. If I do not hear from you by close of business on Thursday, Dec. 19, I will

file the request for extension of time, indicating to the court I was unable to ascertain your position on the matter.

Thanks
- John

John P. Casey
Robinson & Cole LLP
280 Trumbull Street
Hartford, CT 06103-3597
Phone:   860-275-8359
Fax:       860-275-8299
E-Mail:  jcasey@rc.com

Robinson & Cole LLP
Boston/New London/Hartford/Stamford/Greenwich/New York
<http://www.rc.com/>

---------------------------------------------------------------------------------------------------------------
This transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If it is not clear that you are the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution or copying of this transmittal is strictly prohibited. If you suspect that you have received this communication in error, please notify us immediately by telephone at 1-860-275-8200, or e-mail at it@rc.com and immediately delete this message and all its attachments.
---------------------------------------------------------------------------------------------------------------

# Exhibit B

# ROBINSON & COLE LLP

JOHN P. CASEY

280 Trumbull Street
Hartford, CT 06103-3597
Main (860) 275-8200
Fax (860) 275-8299
jcasey@rc.com
Direct (860) 275-8359

January 15, 2003

***Via Facsimile and U.S. Mail***

Gary F. Sheldon, Esq.
Pepe & Hazard LLP
225 Asylum Street
Hartford CT 06103-4302

**Re:    Transportation Insurance Co. v. The Morganti Group, Inc., et al.**

Dear Gary,

I am writing to inquire as to the status of your client's responses to our second set of discovery requests. Pursuant to our agreement and the court's order, your responses were due on Monday, January 13. To date, I have not yet received a response.

If I do not have your responses by this Friday, January 17, I will ask the court to take up this matter. Thank you for your attention to this request.

Very truly yours,

John P. Casey

JPC:skp

cc:    Karen Maher (via facsimile)
Theodore J. Tucci, Esq.

*Law Offices*

BOSTON

HARTFORD

NEW LONDON

STAMFORD

GREENWICH

NEW YORK

*www.rc.com*     HART1-1069223-1

# Exhibit C

# ROBINSON & COLE LLP

JOHN P. CASEY

280 Trumbull Street
Hartford, CT 06103-3597
Main (860) 275-8200
Fax (860) 275-8299
jcasey@rc.com
Direct (860) 275-8359

January 15, 2003

*Via Facsimile and U.S. Mail*

Gary F. Sheldon, Esq.
Pepe & Hazard LLP
225 Asylum Street
Hartford CT 06103-4302

**Re:    Transportation Insurance Co. v. The Morganti Group, Inc., et al.**

Dear Gary:

I am in receipt of your client's proposal regarding resolution of this matter through a voluntary dismissal. I have forwarded it to our client and will get back to you as soon as possible with a response.

While our client considers your proposal, it is imperative that the litigation go forward. To that end, I must ask that you provide us responses to our second set of discovery requests by this Friday, as I requested in my correspondence to you earlier today. As I informed you when you made your last request for an extension of time, we will not agree to any additional extensions. The information we have requested is relevant not only to this case if it does not get resolved, but also to our client's consideration of your proposal. Our client's ability to litigate this case and to respond in a meaningful way to the written proposal you just forwarded today for the first time will be hampered by Morganti's failure to respond to discovery.

Thank you again for your attention to this request. If we do not have your responses by Friday, we will take this matter up with the Court.

Very truly yours,

John P. Casey

JPC:skp

cc:    Theodore J. Tucci, Esq.

*Law Offices*

BOSTON

HARTFORD

NEW LONDON

STAMFORD

GREENWICH

NEW YORK

*www.rc.com*    HART1-1073283-1

# Exhibit D

**Casey, John P**

| | |
|---|---|
| **From:** | Casey, John P |
| **Sent:** | Friday, January 17, 2003 2:31 PM |
| **To:** | 'Sheldon, Gary' |
| **Cc:** | Tucci, Theodore |
| **Subject:** | RE: Morganti |

Gary,
When we spoke in December about the possibility of agreeing to a stay or dismissal, I did
not agree to unconditionally support such a proposal, but only raised it as a possibility
that I would discuss seriously with our client. I distinctly recall informing you that I
was making this suggestion on my own, I had no authority from my client to agree to such a
resolution, and had not yet raised such a proposal with my client for consideration. You
promised to address the idea with your client and get back to me with a specific proposal.
Since those initial discussions more than a month ago, I heard nothing from you on the
issue and assumed it was not something your client wished to pursue. Your letter on
Wednesday was the first indication that your client was truly interested in pursuing a
voluntary dismissal and the first notice of the terms upon which your client would agree
to such a dismissal. As I stated in my correspondence Wednesday, I have forwarded your
proposal to our client and I will get back to you with their response as soon as possible.

While our client considers your proposal, however, we must insist that you respond to our
outstanding discovery requests. The requirement that your respond is not connected to the
submission of your proposal. Indeed, when agreeing to the last 30-day extension I wrote:
"I appreciate the fact that we have been in negotiation about an alternate resolution or
delay in this case, but we must insist that we continue to move the underlying litigation
along until such time we have an alternate agreement. That being said, this is the last
extension we will agree to and we will move to compel your responses if we do not have
them by Jan 13 (Jan 12 falling on a Sunday)."

I believe we made it more than clear last month that we wanted responses to our discovery
requests regardless of any negotiation on the possibility of dismissal. And, in fact,
there was no negotiation, or any communication at all, on such a possibility until your
correspondence on Wednesday, two days after your responses were due. Your failure, then,
to respond when required or to secure an extension of time from the court waives your
right to object to our discovery requests. I will agree to holding off the filing of a
motion to compel until next Wednesday, but on that day we expect to be served with
complete responses to our requests.

John P. Casey
Robinson & Cole LLP
860-275-8359


-----Original Message-----
From: Sheldon, Gary [mailto:GSHELDON@PEPEHAZARD.COM]
Sent: Wednesday, January 15, 2003 6:45 PM
To: 'jcasey@rc.com'
Subject: Morganti


John,

As you know, we discussed the possibility of the dismissal last month. It was my
understanding that you would support the proposal with your client. If you insist that we
respond to your discovery this week, I assume that you consider it unlikely that the
proposal will be accepted.

I would appreciate an agreement to informal extend the date for response to next
Wednesday. I will need that additional time to prepare a response.

Gary

1

# Exhibit E



**Casey, John P**

| | |
|---|---|
| **From:** | Casey, John P |
| **Sent:** | Monday, February 10, 2003 9:04 AM |
| **To:** | 'Sheldon, Gary' |
| **Cc:** | Tucci, Theodore |
| **Subject:** | RE: Morganti |

Gary,
We'll agree, but we need a response by the end of the day on Wednesday.

John P. Casey
Robinson & Cole LLP
860-275-8359


-----Original Message-----
From: Sheldon, Gary [mailto:GSHELDON@PEPEHAZARD.COM]
Sent: Friday, February 07, 2003 6:27 PM
To: 'jcasey@rc.com'
Subject: Morganti


I apologize for not getting back to you sooner.  The client has been on vacation and we
have had trouble finding a time that Lou and I could speak to him.  He is back on Monday,
but I will be in probate court adopting my son.

Please confirm by voicemail that you can agree to wait until wednesday at the latest.

Thank you for your courtesy.

Gary Sheldon
cell - 918-5239

1

# Exhibit F

# ROBINSON & COLE LLP

JOHN P. CASEY

280 Trumbull Street
Hartford, CT 06103-3597
Main (860) 275-8200
Fax (860) 275-8299
jcasey@rc.com
Direct (860) 275-8359

Also admitted in Rhode Island

*Via Certified Mail, Return Receipt Requested*

January 14, 2003

Gary F. Sheldon, Esq.
Pepe & Hazard LLP
225 Asylum Street
Hartford CT 06103-4302

**Re: Transportation Insurance Co. v. The Morganti Group, Inc., et al.**

Dear Gary:

As this litigation moves forward to conclusion, I write concerning Morganti's
responses to discovery. Foremost, I note that although we had a "meet and confer"
over one year ago concerning Morganti's responses to TIC's first set of discovery
requests, we have still not received a supplemental response in accordance with the
terms agreed upon during our meet and confer conference – most importantly, a
privilege log of those documents Morganti has withheld on the grounds of privilege.
I expect that you will be in a position to provide me with supplemental responses and
a privilege log by no later than February 2, 2004. If we do not receive Morganti's
compliance by that date, we will seek appropriate relief from the court. In this letter,
I will focus on Morganti's response to our Second Set of discovery requests.

### Interrogatories

In general, there are deficiencies in Morganti's overall responses as well as
unsupported or unnecessary objections. I ask as a preliminary matter that Morganti
reconsider whether it wishes to maintain all of its objections, especially where
Morganti otherwise provides a substantive response. If Morganti intends to maintain
these objections, I need to know whether responsive information is being withheld on
the basis of these objections or if Morganti's responses are complete although subject
to the objection.

In addition to these general concerns, I also have the following specific comments:



*Law Offices*

BOSTON

HARTFORD

NEW LONDON

STAMFORD

GREENWICH

NEW YORK

*www.rc.com*

HART1-1148107-1

# ROBINSON & COLE LLP

Gary F. Sheldon, Esq.
January 14, 2004
Page 2

### Interrogatory 2

In Morganti's response to this interrogatory, it indicates that the paint was "supplied" to the project by Latin American Painting and Hernandez Painting Inc. Since this question called for the identity of the entity that "applied" the paint, I will assume that Morganti intended to respond that the paint was "applied" by those two entities and that the use of the word "supplied" in this response was a scrivner's error. If my assumption is incorrect, let me know. More importantly, however, is Morganti's failure to clarify which entity actually applied this paint. By listing two companies, it is unclear whether they each applied some paint or that this is one entity that is known by two different names. In Morganti's production responses, Hernandez Painting, Inc. was identified as Morganti's painting subcontractor on the subcontract itself, but certificates of insurance identified Latin American Painting. Please clarify which entity actually conducted the work.

### Interrogatory 4

In this interrogatory Morganti was asked to identify which company supplied the paint to the project. Morganti again answered that it was supplied by Latin American Painting and Hernandez Painting, Inc. Again, this answer is confusing unless both companies supplied the paint. This answer is also contradicted by the document production which suggests that Sherwin-Williams supplied the paint. I ask that Morganti please clarify the answer.

### Interrogatories 5 and 6

In these interrogatories Morganti was asked to describe in detail Morganti's actions to remedy the paint peeling problem and to provide in detail any investigation or analysis performed by or on behalf of Morganti concerning the problem. Morganti's answers to these interrogatories are unresponsive. Although under Federal Rule of Civil Procedure 33(d) it is appropriate to refer to specific documents in which this information could be found, the manner in which Morganti provided its production responses give us no indication as to which documents are responsive to these interrogatories. Furthermore, the documents fail to fully answer these questions which require a complete description of all costs and expenses, the identity of all persons or entities involved, and the dates any activities took place.



# ROBINSON & COLE LLP

Gary F. Sheldon, Esq.
January 14, 2004
Page 3

### *Requests for Production*

In general, the condition of the documents Morganti provided in response to all of the requests for production was unacceptable. There is no indication in Morganti's discovery response as to which document is responsive to which request, which is required by Federal Rule of Civil Procedure 34(b). Furthermore, there are multiple copies of many of the same documents such that nearly two-thirds of the documents provided to us were duplicates. While these duplicates may have some significance if they mean to respond to separate requests, this can not be ascertained due to the manner in which the production was supplied. In addition, as with Morganti's objections to the interrogatories, I must ask whether Morganti's objections to the requests for production are meant to suggest that there are further responsive documents which have not been disclosed or if all relevant documents have been provided notwithstanding Morganti's objections. If Morganti is withholding documents based on its objections, I must ask that you provide a privilege log as required by the rules of procedure. On the other hand, if you are not withholding any documents, I ask that Morganti clarify its responses and remove its objections so that we can be sure Morganti has provided complete and accurate responses to these production requests.

In addition to these general concerns, I also have the following specific comments:

Request for Production 1

In this request we ask for all documents relating to the construction contract including the demands to correct the peeling paint conditions. Notwithstanding Morganti's objection, you stated that Morganti will produce the contract and any correspondence from the USPS. In the papers provided to us, there were what appeared to be some parts of the subcontracts between Morganti and SMI Steel and Hernandez Painting. However, a complete copy of the contract is clearly not part of the materials provided to us. In addition, while there are one or two letters from the Postal Service concerning this problem, it seems inconceivable that that is the full extent of communications regarding this problem and the contract. Please provide all correspondence between the USPS and Morganti.

Request for Production 2

In this request we ask for all documents relating to the subcontract between Morganti and Morganti's painting subcontractor and suppliers. In the papers provided to us, there were only two letters from Hernandez Painting and parts of the subcontract.



# ROBINSON & COLE LLP

Gary F. Sheldon, Esq.
January 14, 2004
Page 4

Furthermore, it appears that all documents provided to us are from after the paint peeling problem was discovered. In its demand letter, the USPS noted that there was a change in the painting contract specifications; however, there are no materials in the documents Morganti provided us concerning that change. It is unlikely that there were only two letters between Morganti and Hernandez Painting. Please produce all documents responsive to this request, not only those documents from subsequent to the peeling paint condition, but from before or during the construction of this project as well.

Request for Production 3

Request number 3 asks for the same documents for the steel suppliers and installers as was requested in request number 2 for the paint suppliers and painting subcontractors. We have the same concerns about Morganti's response to this request as to its response to Request number 2. Therefore, please provide all documents responsive to this request, not only those documents generated after the discovery of the problem, but those from the time of the construction of the project as well.

Request for Production 4

In this request we ask for all documents relating to the communications between USPS and Morganti pertaining to the paint problem and other defects in the construction and/or painting of the ceiling. As noted above, although Morganti's production included a couple of letters from the USPS, it appears unlikely that for a project of this magnitude there were so few documents relating to this problem. Please provide all documents responsive to this request.

Requests for Production 5-8

As stated above, the documents produced to us included many duplicates. For the most part, the documents consisted of communications (faxes, e-mail, correspondence) between Morganti and a number of entities concerning the paint peeling problem. Each of these four requests ask for specific documents. The production Morganti provided may or may not be responsive to some or all of these requests; however, due to the manner in which Morganti disclosed its documents, it is impossible to discern what, if anything is responsive to each particular request or if Morganti has fully complied with each individual request for documents. This concern is magnified by the fact that there are objections to each of these requests which raise the question whether further responsive documents exist that are being withheld. As you stated in Morganti's written responses, Morganti would produce



# ROBINSON & COLE LLP

Gary F. Sheldon, Esq.
January 14, 2004
Page 5

subcontract documents and subcontractor files, correspondence between Morganti and Willis, non-privileged communications regarding potential insurance coverage, and test reports and studies in Morganti's possession regarding the paint issue. Due to the manner in which Morganti's production response was presented, we are unable to determine if Morganti has complied with its discovery obligations. Therefore, we ask that Morganti identify with specificity which documents are responsive to each request.

Request for Production 10

In this request, we asked for all documents relating to the CGL and umbrella policies issued to Morganti from 1999 to 2001. Surprisingly, Morganti objected to this request and provided no substantive response to it. We believe that Morganti should withdraw this objection and provide a complete response to this request. In Morganti's counterclaims it is alleged that TIC failed to provide insurance coverage as agreed upon between it and Morganti. Therefore, we do not understand how Morganti can refuse to turn over documents which might shed light on the alleged agreed-upon insurance coverage. We ask that Morganti re-evaluate its objection and provide all documents which evidence insurance coverage promised to Morganti by TIC for the relevant policy years.

Request for Production 12

In number 12 we asked for all documents pertaining to other insurance issued to Morganti in connection with the project, including bonds. In its response, Morganti stated it would produce the payment and performance bonds – and a copy of those were included with the papers provided to us; however, we ask that you provide a complete response to this request and provide documents regarding all other insurance issued to Morganti including that insurance that was in effect prior to the inception of coverage under TIC's policy in 1999.

Request for Production 13

In response to this request, which asks for all documents relating to any lawsuits or other claims made against its subcontractors, Morganti responded that there were no such documents, but conditioned that response upon a lengthy objection. I ask that you clarify Morganti's response and either withdraw the objection or make clear that documents are withheld based on the objection.



# ROBINSON & COLE LLP

Gary F. Sheldon, Esq.
January 14, 2004
Page 6

<u>Request for Production 14</u>

In number 14 we ask for all documents relevant to or relied upon by Morganti in its response to Interrogatory 6, which asked for details of any investigation or analysis performed by or on behalf of Morganti. Morganti objected to request number 14 and, presumably, provided no documents responsive to it. This objection, however, is inconsistent with Morganti's actual answer to Interrogatory 6 in which it is stated that Morganti's actions regarding investigation or analysis are reflected in "documents attached to this discovery response." While it appears that in the documents Morganti provided there are documents related to analysis and investigation, this inconsistency needs to be resolved. Therefore, I ask that Morganti withdraw the objection, provide some substantive written response, and clarify which of documents that were provided to us are responsive to this request.

Thank you for your attention to these matters. Due to the approaching discovery deadline, I ask that you either provide a complete written response within ten days of the date of this letter or call me within the next week to discuss our concerns. If I do not have a response from you as requested, I will ask that the court take up this matter.

Very truly yours,

John P. Casey

JPC/dlc

